665 So.2d 782 (1995)
Robert N. BASS
v.
NATIONAL MAINTENANCE CORPORATION.
No. 95 CA 0367.
Court of Appeal of Louisiana, First Circuit.
December 15, 1995.
*783 Burton P. Guidry, Baton Rouge, for Plaintiff-Appellee Robert N. Bass.
Gregory E. Bodin, Taylor, Porter, Brooks & Phillips, Baton Rouge, for Defendant-Appellant National Maintenance Corporation.
Before SHORTESS, PARRO and KUHN, JJ.
PARRO, Judge.
This is a workers' compensation action in which an employee, Robert N. Bass ("Bass"), sought to recover supplemental earnings benefits as a result of an ankle injury suffered while in the course and scope of his employment with National Maintenance Corporation ("National"). The hearing officer for the Louisiana State Office of Workers' Compensation Administration ("OWC") ruled in favor of Bass and awarded supplemental earnings benefits. From a judgment by the successor hearing officer, National appeals. For the following reasons, the judgment is reversed.

Facts and Procedural History
Bass injured his right ankle in a workrelated accident on November 19, 1991 while employed by National as a pipe fitter. Bass sought medical treatment for his ankle from Dr. Charles A. Strange for a period of approximately six-and-a-half months, after which time Dr. Strange released Bass to return to work at full duty without any restrictions (on June 8, 1992). Full compensation benefits were paid to Bass until June 7, 1992. Due to the lack of an open position for a pipe fitter, Bass was unable to return to his former employment with National at that time. Despite repeated efforts to obtain a job as a pipe fitter, Bass was unable to secure one, and he accepted employment with Capitol City Glass for substantially less pay.
Thereafter, Bass filed a disputed claim for compensation seeking a determination of his entitlement to supplemental earnings benefits ("SEB"). Following the September 1, 1993 trial on the merits, Hearing Officer Norbert C. Rayford orally ruled that because Bass was unable to find a job as a pipe fitter, he was entitled to SEB. On August 12, 1994, Hearing Officer Pamela Moses-Laramore signed a judgment which awarded Bass SEB and ordered National to pay benefits in the amount of $295 per week from June 8, 1992, through the present and until modified by judgment.[2] National appeals and contends that the hearing officer improperly awarded SEB in light of the uncontradicted testimony of the treating physician and Bass that proved he was no longer disabled.

Standard of Review
In a workers' compensation case, as in other civil cases, the appellate court's review of facts is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Department of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129, 132; Kennedy v. Security Industrial Insurance Company, 623 So.2d 174, 175 (La.App. 1st Cir.), writ denied, 629 So.2d 389 (La.1993).
A court of appeal may not overturn a judgment of a hearing officer absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. See Stobart v. State, Through Department of Transportation *784 and Development, 617 So.2d 880, 882, n. 2 (La.1993). Before an appellate court may reverse a factfinder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong (manifestly erroneous). Id. at 882; see Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
Appellate review of questions of law is simply review of whether the trial court was legally correct or legally incorrect. O'Niell v. Louisiana Power & Light Company, 558 So.2d 1235, 1238 (La.App. 1st Cir.1990).

Validity of the Judgment
It is public knowledge that Norbert Rayford ("Rayford") was appointed to serve as a hearing officer for the OWC in district 5 on February 1, 1990. His appointment was effective until he resigned from this position on June 10, 1994. Prior to his resignation, Rayford rendered a decision in this matter, but the judgment was not signed until August 12, 1994, which was after the resignation. Therefore, the judgment was signed by another hearing officer, Pamela Moses-Laramore ("Moses-Laramore"). However, there is nothing in the record that explains Moses-Laramore's authority to sign the judgment in this matter.
If Moses-Laramore lacked authority to sign the judgment, the judgment which forms the basis for this appeal is not valid, and this court does not have jurisdiction at this time. See LSA-R.S. 23:1310.5(A)(2); LSA-C.C.P. arts. 1, 2083, and 2162. Therefore, before addressing the merits of this case, this court finds it necessary to determine the validity of the August 12, 1994, judgment signed by Moses-Laramore.
LSA-R.S. 23:1310.5(A) provides:
(1) Insofar as may be possible, all the evidence pertaining to each case, except as to noncontested matters, shall be heard by the hearing officer initially assigned to the case. Upon the completion of such hearing or hearings, the hearing officer shall make such order, decision, or award as is proper, just, and equitable in the matter.
(2) Either party feeling aggrieved by such order, decision, or award shall, after receipt by certified mail of the order, decision, or award, have the right to take an appeal to the circuit court of appeal for the judicial district elected by the claimant upon the filing of the petition. A copy of the petition for appeal shall be filed with the director who, upon receipt will prepare the record for the appellate court. (Emphasis added.)
In light of this statutory provision, there is an implication that the case cannot be decided by any hearing officer other than "the" one who heard the case and only that hearing officer is authorized to enter such order, decision, or award as is proper, just, and equitable in the matter. See Darensbourg v. The Great Atlantic and Pacific Tea Company, Inc., 94-0761, p. 3 (La.App. 1st Cir. 11/9/95), 665 So.2d 35, 37; Ledoux v. Southern Farm Bureau Casualty Insurance Company, 337 So.2d 906, 908 (La.App. 3rd Cir. 1976). As previously observed, the present case was heard and decided by Rayford. Subsequently, Moses-Laramore signed the judgment. Since the judgment was not signed by the hearing officer who heard and decided the case, we must consider whether the law authorizes a successor hearing officer to sign the judgment in this matter.
LSA-R.S. 13:4209(B) authorizes a successor judge to sign a judgment which conforms with the judgment rendered when the judge who tried the case and rendered a decision dies, resigns or is removed from office, or if his term expires before a judgment is signed in the case. The applicability of this statute is specifically limited to successor judges of the district courts and city courts of this state and by its terms is inapplicable to OWC hearing officers who are not members of the judiciary. LSA-R.S. 13:4209(A); see LSA-R.S. 23:1021(12) and 1310.1.
Since January 1, 1990, the administrative hearing officers are vested with original, exclusive jurisdiction over claims or disputes arising out of the workers' compensation law. LSA-R.S. 23:1310.3(E); see LSA-Const. art. V, § 16(A). The hearing officer's role in the administration of those claims or disputes is defined in the Workers' Compensation *785 Act. The hearing officer is not bound by the technical rules of evidence or procedure other than as provided for in the workers' compensation law. LSA-R.S. 23:1317(A). In addition to those procedures set forth by statute, the director of the OWC has authority to adopt and promulgate reasonable rules and regulations, including the rules of procedure before the hearing officers, according to the procedures established by the Administrative Procedure Act. LSA-R.S. 23:1291(B)(13) and 1310.1(C). All rules and regulations, properly approved and promulgated under the Administrative Procedure Act, shall be consistent with the workers' compensation law and shall be binding in the administration of that law. LSA-R.S. 23:1310.1(C).
Chapter 10 of Title 23 of the Louisiana Revised Statutes does not contain a provision similar to LSA-R.S. 13:4209, nor does it directly make the provisions of LSA-R.S. 13:4209 applicable to the hearing officer system in the OWC. In the absence of any such provision, a successor hearing officer is without authority to render a decision and/or sign an order, decision, or award if he or she was not the one who heard the matter. See LSA-R.S. 23:1310.5(A). However, pursuant to the authorization provided in LSA-R.S. 23:1291(B)(13) and 1310.1(C), the director of the OWC has promulgated hearing officer rules which govern the practice and procedure in workers' compensation proceedings. See LAC 40:I.2101-2173 ("Hearing Officer Rules"). Pertinent to the determination of the validity of the judgment signed by the successor hearing officer is Hearing Officer Rule 2105 which provides:
Any matter of practice or procedure not delineated herein and not in conflict with either the Workers' Compensation Act or these rules will be guided by practice and procedure followed in the district courts of this state as well as the practice and procedures provided for in the Louisiana Code of Civil Procedure.
The annotation following this rule indicates that it was promulgated in accordance with LSA-R.S. 23:1310.1.
Since the authority of a successor hearing officer has not been delineated by the workers' compensation law or Hearing Officer Rules, this issue will be governed by the practice and procedure applicable to the district courts of this state which is found in LSA-R.S. 13:4209. Furthermore, this court notes that Hearing Officer Rule 2159 implicitly assumes the applicability of the principles of LSA-R.S. 13:4209 to the workers' compensation proceeding in that it specifically provides for the submission of a case when a successor hearing officer is involved.[3]
After considering LSA-R.S. 23:1310.5(A), Hearing Officer Rule 2105, LSA-R.S. 13:4209, and the record before us, we conclude that Moses-Laramore (as a successor hearing officer) had authority to sign the judgment in this case. See Ridlen v. St. Charles Manor Nursing Center, Inc., 94-275, p. 2 (La.App. 5th Cir. 10/12/94), 644 So.2d 244, 245, writ denied, 94-3039 (La. 2/3/95), 649 So.2d 410. Therefore, the judgment appealed from is valid, and this court has jurisdiction to consider National's arguments on the merits of this case.

Disability
Bass was released to return to work without restriction by his treating physician on June 8, 1992. Eager to return to his prior employment as a pipe fitter, Bass returned to his former place of employment seeking reinstatement to his position. Unfortunately, National did not have any open positions for *786 a pipe fitter and was required to lay Bass off.[4] Thereafter, Bass actively sought employment as a pipe fitter with different employers, but to no avail. Upon being unable to obtain reemployment as a pipe fitter, Bass accepted a substantially lower paying job with Capitol City Glass, where he was working as a windshield installer at the time of trial.
In light of his differential in pay, Bass contended he was entitled to SEB because he was unable to earn 90 percent of his preinjury wages. However, the threshold issue is whether his inability to earn at least 90 percent of his pre-injury wages was caused by his injury.
Basically, the employee in an SEB case must prove by a preponderance of the evidence that his work-related injury rendered him unable to earn 90 percent of his pre-injury wages. LSA-R.S. 23:1221(3)(a). The supreme court in Allen v. City of Shreveport, 618 So.2d 386 (La.1993), addressed the employee's burden of proof under LSA-R.S. 23:1221(3)(a) and began its analysis of this issue by recognizing that SEB was established as a method of replacement of lost wages for partially disabled employees. Allen v. City of Shreveport, 618 So.2d at 388. When an injured employee is able to engage in a gainful occupation, but because of his work-related disability is unable to earn wages at the level he was earning prior to his injury, he is classified as partially disabled. Id. When the partial disability reaches the level that the employee is unable to earn wages equal to 90 percent or more of his preinjury wages, the employee is entitled to SEB. Id. In other words, in order to succeed in a claim for SEB, the employee must prove that he is partially disabled and that because of his disability he is unable to earn wages equal to 90 percent or more of his preinjury wages.
Once the SEB employee establishes his prima facie case, the burden shifts to the employer to show that the employee is physically capable of work and that the work was offered or available in the reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i); Lubom v. L.J. Earnest, Inc., 579 So.2d 1174, 1180-81 (La.App. 2nd Cir.1991). If the employer meets this burden, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. LSA-R.S. 23:1221(3)(c)(ii); Lubom v. L.J. Earnest, Inc., 579 So.2d at 1181.
The jurisprudence is clear that the claimant has the initial burden of proof. It is not until this proof has been met that the burden shifts to the employer. In the absence of preponderant proof by the claimant that his work-related injury rendered him unable to earn 90 percent of his pre-injury wages, his demand for SEB must fail.
In deciding whether an employee in a workers' compensation action has proven his claimed disability, the totality of the evidence, medical and lay, must be considered. Guillory v. Soloco, Inc., 570 So.2d 139, 142 (La.App. 3rd Cir.1990). It is the hearing officer's function to determine the weight to be accorded the medical and the lay testimony. The hearing officer's factual determination as to disability, including the length of disability, is entitled to great weight and will not be disturbed except upon a showing of manifest error. Id.; City of Baton Rouge v. Noble, 535 So.2d 467, 472 (La.App. 1st Cir. 1988), writ denied, 539 So.2d 632 (La.1989).
In oral reasons, the hearing officer who heard the case found the evidence revealed that Bass was not disabled and that he was capable of returning to his former job as a pipe fitter. Additionally, he noted that Bass desired to return to his job as a pipe fitter, but he was prevented from doing so through no fault of his own. Based on these findings, the hearing officer concluded that Bass fell into the odd lot doctrine which entitled him to SEB.
Bass's testimony revealed he felt that he was capable of returning to work as a pipe fitter. His medical records indicated that Dr. Strange was of the medical opinion that Bass was physically capable of returning to *787 his former job on June 8, 1992. The simple fact that Bass was prevented from obtaining a job as a pipe fitter due to economic times alone is insufficient to prove that Bass's initial disability caused by the ankle injury resulted in his inability to obtain such a job at a later date. The hearing officer believed that Bass would be working as a pipe fitter had he been able to obtain such employment. Obviously, the hearing officer thought that Bass was physically capable of returning to his former job as a pipe fitter in June of 1992.
Although Bass stated that he had problems with his ankle continuously since the accident, we find no record evidence that Bass was unable to earn 90 percent of his former wages due to physical limitations resulting from the November 1991 accident.[5] After a thorough review of the entire record and considering the totality of the evidence, this court concludes that no reasonable factual basis existed for the hearing officer's determination that Bass was incapable of earning at least 90 percent of his pre-injury wages as of June 7, 1992, as a result of his November 19, 1991, injury. Based on our review, this court further concludes that the record established the factual determination of the hearing officer was manifestly erroneous. Moreover, his legal determination regarding Bass's entitlement to SEB was incorrect. In light of the absence of preponderant proof by Bass that his ankle injury rendered him partially disabled and unable to earn 90 percent of his pre-injury wages, his demand for SEB must fail.

Decree
For the foregoing reasons, the hearing officer's judgment is reversed and rendered, dismissing Bass's suit. Costs of this appeal are assessed to Bass.
REVERSED AND RENDERED.
SHORTESS, J., concurs in part and dissents in part with reasons.
SHORTESS, Judge, concurring in part and dissenting in part.
In my opinion, in enacting Louisiana Revised Statutes 23:1291(B)(13) and 23:1310.1(C) the legislature did not intend to give the director of OWC authority to place administrative hearing officers in the same position as elected judges wherever the word "judge" appears in our laws. Revised Statute 13:4209(B) is specifically limited to successor judges of the district courts and city courts of this state and should not be expanded to include hearing officers. I believe the judgment in this case is invalid because it was not signed by the hearing officer who heard the case.
I agree, however, with the majority's finding that plaintiff is not entitled to supplemental earnings benefits for the reasons set forth in the opinion.
I respectfully dissent in part and concur in part.
NOTES
[2] This judgment (which had been approved as to form and content) was jointly submitted by the parties.
[3] Rule 2159 provides:

A case or other matter shall be considered as having been fully submitted for decision immediately upon the conclusion of trial or hearing. All testimony, depositions, documents and evidence shall be introduced on or prior to the day of trial. In instances where the Workers' Compensation Court allows briefs, the parties shall be allowed a maximum of five (5) working days within which to file concurrent briefs.
If a transcript of the testimony is ordered by the Workers' Compensation Court due to the appointment of a successor judge, it shall be filed within thirty days of the appointment, and the case or matter shall not be considered as fully submitted until the reporter files the transcript.
When necessary, for good cause shown, one extension may be granted by the Worker's Compensation Judge not to exceed an additional fifteen days for filing of the transcript.
[4] Bass admitted that layoffs between jobs were very typical in National's industry.
[5] Since Bass did not prove a prima facie case, the burden never shifted to the employer to show that the employee is physically capable of work and that work was offered or available in the reasonable geographic region.