968 So.2d 1204 (2007)
Donald BUDDIN, Claimant-Appellant
v.
CONAGRA POULTRY COMPANY, Defendant-Appellee.
No. 42,535-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2007.
*1205 Robert W. Hallack, Baton Rouge, for Claimant/Appellant.
Hayes, Harkey, Smith & Cascio, by John B. Saye, Monroe, for Defendant/Appellee.
Before BROWN, CARAWAY, and PEATROSS, JJ.
BROWN, Chief Judge.
In this workers' compensation action, claimant, Donald Buddin, has appealed from the dismissal of his claim for medical benefits, penalties, and attorney fees, from defendant, ConAgra Poultry Company.[1] Finding that the Workers' Compensation Judge ("WCJ") erred in concluding that claimant failed to establish that his back *1206 injury was caused by a work-related accident, we reverse that part of the WCJ's judgment denying Buddin's benefits.

Facts and Procedural Background
In September 1995, after retiring from a career in the United States Air Force, claimant, Donald Buddin, went to work for ConAgra in Union Parish, Louisiana. Buddin worked as part of a team that maintained the large scales used by the company to weigh chickens.
During the course and scope of his employment, Buddin injured the rotator cuff in both of his shoulders. He is currently receiving temporary total disability benefits for these injuries, and his entitlement to compensation for the rotator cuff injuries is not at issue in this appeal. Buddin has also claimed that he sustained a herniated spinal disc as a result of a work-related accident. ConAgra denied that Buddin's back injury was the result of an on-the-job incident, and the WCJ rendered judgment in favor of ConAgra, finding no causal connection between Buddin's back injury and his employment.
As an airman with the Air Force and later as a retiree, Buddin has obtained medical treatment through military hospitals, and most recently at Barksdale Air Force Base ("BAFB") in Bossier City, Louisiana. The extensive medical records admitted into evidence, detailing Buddin's medical history for decades, reveal that claimant had no significant complaints of back pain prior to March 20, 2002, apart from one incident in 1978 that apparently resolved without further treatment.
Claimant's Testimony
At trial, Buddin testified that he injured his back at work while pulling the large scale used for weighing chickens. He didn't notify anyone in his crew or a supervisor that day because it was a Sunday. Buddin stated that he told his supervisor, Joey Gaspard, about the incident after he saw the doctor at BAFB. The medical report for a March 20, 2002, visit relates that Buddin injured his back dragging a 200-lb. scale. As a result of his accident, he missed two weeks from work. Buddin recalled that his supervisor advised him that the simplest way to handle it would be for him to put the missed time down as sick leave. No work documents were produced to contradict this testimony.
After the two weeks off, claimant returned to his regular job duties until around April 2003, which is when his shoulder problems began. After he had surgery on both shoulders, claimant attempted to return to work with restrictions, but was told not to come back in until he was 100%. Buddin stated that his back condition worsened during this time. He had tingling and numbness down his left leg, which did not begin until after the incident when he hurt himself dragging the scales.
The WCJ questioned claimant about his back pain and its origin. While Buddin was unable to give a specific date for when his back pain began, he was certain about two things: it occurred in 2002 and he went to BAFB for treatment. Buddin also testified that he took two weeks off after his accident, then returned to his previous assignment, which was scales maintenance. While his shoulder injuries occurred over a period of time, his back injury began after a specific incident, then was continuous after that accident. When it got worse, that's when he told the doctor and had surgery.
Medical Evidence
On March 20, 2002, Buddin saw Dr. John Goddard at the BAFB hospital. The medical record shows that the then 56-year-old claimant presented with a complaint of constant sharp lower back pain and left hip pain. Buddin related to Dr. *1207 Goddard that he had injured his lower back and buttocks at work while dragging a 200 lb. scale. Claimant also told Dr. Goddard that the pain radiated into his left hip. Dr. Goddard prescribed Tylenol, Anaprox, Flexeril and Lortab, but imposed no work restrictions.
After consulting Dr. Goddard, Buddin sought further medical treatment, none of which, however, until he treated with Dr. Ramos in October of 2003, was related to his back injury.
On October 16, 2003, Buddin's wife called Dr. Marilyn Uhr, who had been treating claimant for high blood pressure, diabetes and heart problems, and was referred to Dr. Marco Ramos, a neurosurgeon, for Buddin's back pain and sciatica. An MRI revealed, among other things, a bulging disc at L5-S1 with a mild impingement of the right S-1 nerve root. Buddin reported to Dr. Ramos that the pain had been "off and on" for about five years but almost constant for about two years. In a letter to Dr. Uhr, Dr. Ramos reported that:
The patient states that for the last two years or so he has been having almost constant low back pain radiated to the posterior aspect of both lower extremities. At times, this is worse in the right than in the left. The symptoms are precipitated by driving and sitting.
Notably, Dr. Ramos did not ask Buddin if he had injured his back in a specific incident, and claimant did not volunteer this information. Dr. Ramos diagnosed Buddin with a herniated nucleus pulposus at L5-S1 and with lumbrosacral radiculopathy, but was unable to determine the age of this condition.
On November 19, 2003, Dr. Ramos performed hemilaminectomy surgery on Buddin's back to correct the problem. During surgery, Dr. Ramos found that claimant's condition was chronic, i.e., it had not developed over the past several months. Dr. Ramos believed that the condition was consistent with an injury as described by claimant because the condition had become chronic but the doctor did not say with certainty that the injury was a result of the March 2002 incident.
Buddin saw another neurosurgeon, Dr. Donald Smith, on August 16, 2004, for an evaluation of his claima "second opinion" visit. Claimant told Dr. Smith that he had suffered an accident at work but was not more specific about what he believed to be the cause of his injury. Dr. Smith reviewed Dr. Ramos' operative notes and opined that Buddin's back problem could be the result of a long period of repetitive small injuries or from a single episode of injury. Dr. Smith said that the limited history that he took from Buddin did not permit the doctor to relate claimant's problem to an individual event.
The WCJ's Opinion
After considering the above testimony and medical evidence, the WCJ took the matter under advisement and on August 24, 2006, issued her verbal reasons for judgment, in which she stated, in part:
Claimant was unable to determine the day of his accident. He speculated it occurred on a Sunday before a doctor's visit. He speculated it occurred on March 17, 2002, or September or October 2002. He did not report an injury to Dr. Uhr nor to Dr. Ramos prior to the affidavit. He gave reports noting radiating pain for two years and on another occasion for five years. . . .
Claimant failed to demonstrate an accident with a resulting herniated disc which led to a disability. Following the alleged accident, claimant continued to perform strenuous duties. Prior to March 17th, 2002, claimant experienced radiating pain. Claimant has no independent *1208 recollection of when he injured his back and he did not report the incident to his treating physicians. These factors cast serious doubt upon claimant's version of the incident and his request for workers' compensation benefits must be denied.

Discussion
Applicable Legal Principles
In a workers' compensation action, the claimant must establish a work-related accident by a preponderance of the evidence. Byrd v. Caddo Parish School Board, 39,793 (La.App.2d Cir.06/29/05), 907 So.2d 849; Millage v. Builder's Lumber & Supply Co., 38,635 (La.App.2d Cir.07/02/04), 877 So.2d 1171, writ denied, 04-1885 (La.10/29/04), 885 So.2d 594. Proof by a preponderance of the evidence exists when the evidence, taken as a whole, shows the facts sought to be proved are more probable than not. Byrd, supra; Lewis v. Chateau D'Arbonne Nurse Care Center, 38,394 (La.App. 2d Cir.04/07/04), 870 So.2d 515.
In order for the employee to recover, he must establish a causal link between the work-related accident and his injury. Albert v. Trans-Met, Inc., 38,261 (La. App.2d Cir.06/23/04), 877 So.2d 183; Qualls v. Stone Container Corporation, 29,794 (La.App.2d Cir.09/24/97), 699 So.2d 1137, writ denied, 97-2929 (La.02/06/98), 709 So.2d 736. The claimant does not necessarily have to establish the exact cause of his disability or injury, but he must demonstrate by a preponderance of the evidence that the accident had a causal connection with it. Buxton v. Sunland Construction, 34,995 (La.App.2d Cir.08/22/01), 793 So.2d 526; Nunn v. CBC Services, Inc., 32,491 (La.App.2d Cir.01/26/00), 750 So.2d 474.
The uncontradicted testimony of a workers' compensation claimant alone may be sufficient to establish a claim if there is no other evidence which discredits or casts serious doubt on the claimant's version of the incident, and the claimant's testimony is corroborated by the testimony of fellow workers, spouses, and other close family members, friends, or the introduction of medical evidence. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Newsome v. Atmos Energy, 41,413 (La. App.2d Cir.08/23/06), 938 So.2d 1098; Byrd, supra. The weight afforded a treating physician's testimony is largely dependent upon the facts upon which his opinion is based. Id.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Id.; Murray v. Hollywood Casino, 38,539 (La.App.2d Cir.06/23/04), 877 So.2d 199. Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the workers' compensation judge. Lewis, supra. However, the appellate court is not required by the manifest error standard to affirm the trier of fact's refusal to accept as credible uncontradicted testimony where the record indicates no sound reason for its rejection and where the factual finding has been reached by overlooking applicable legal principles. Bruno, supra; Harris v. Casino Magic, 38,137 (La.App.2d Cir.01/28/04), 865 So.2d 301, writ denied, 04-0502 (La.04/08/04), 870 So.2d 275.
Analysis
Claimant first asserts that the WCJ erred in concluding that he did not have an accident on March 17, 2002, while working at ConAgra. We agree. In making this finding, the WCJ noted several times that Buddin was confused about the date of his *1209 accident and was unable to conclusively place the incident in either March or September/October 2002. While claimant was unable to testify with certainty as to the exact date of his accident, his medical records show that on March 20, 2002, Buddin reported to his treating physician, Dr. John Goddard, that the accident occurred the previous Sunday, which would have been March 17, 2002. The record plainly shows that claimant reported a work-related accident causing lower back and right leg pain to his treating physician on March 20, 2002. The WCJ erred in finding otherwise.
The next assignment of error raised by claimant is that the WCJ erred in failing to find a causal connection between his accident and his herniated disc. As noted above, Buddin's statements about how the accident occurred were corroborated by his first report of the incident, which occurred three days post-accident and was made to claimant's treating physician, Dr. John Goddard. In reporting his symptoms, Buddin related to Dr. Goddard that since the accident, he had experienced sharp lower back pain and pain radiating into his left hip. Buddin testified that he reported his injury to his superiors at work and as directed by his supervisor, he took two weeks of sick leave before returning to work. This testimony was not contradicted. Work records were not presented. Thereafter, although he experienced constant back pain and discomfort, claimant did not seek further medical treatment for his back until he saw Dr. Ramos in October 2003. It was during this period that Buddin had surgery on both shoulders. His complaints at that time were identical to those he made to Dr. Goddard in March 2002: lower back pain and pain radiating down his hip and thigh. A review of the medical records introduced into evidence reveals that claimant had no similar complaints or symptomology prior to the March 17, 2002, incident at ConAgra except for the one bout of back pain approximately 10 years earlier.
Claimant's burden was proof of a causal connection between his accident and his disc injury by a preponderance of the evidence. On this record, the WCJ was clearly wrong in failing to find that Buddin's back condition was causally connected to the March 17, 2002, accident. ConAgra is therefore obligated to pay for all medical treatment associated with claimant's disc injury.
However, we decline to award the penalties and attorney fees requested by claimant, finding that due to the time span between the injury and surgery ConAgra had some factual and medical information to controvert the claim. See La. R.S. 23:1201(E); Brown v. Guide Corporation, 42,141 (La.App.2d Cir.05/09/07), 956 So.2d 808; Thomas v. Casino Magic, 39,725 (La. App.2d Cir.05/11/05), 902 So.2d 1283. Likewise, the employer did not act in an arbitrary or capricious way or without probable cause in failing or refusing to pay claimant's benefits. See La. R.S. 23:1201.2; Hubbard v. Allied Building Stores, Inc., 41,534 (La.App.2d Cir.11/01/06), 942 So.2d 639.

Conclusion
For the reasons set forth above, the judgment of the Workers' Compensation Judge is REVERSED. We hereby RENDER judgment in favor of claimant, Donald Buddin, awarding him medical benefits for his disc injury. Claimant's request for penalties and attorney fees is denied. Costs are assessed to defendant, ConAgra Poultry Company.
NOTES
[1] ConAgra now operates as Pilgrim's Pride Corporation but will be referred to throughout this opinion as ConAgra.